**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ANNA LA FRONZA, and NATALIA KUPIEC, individually and on behalf of all others similarly situated, | ) ) ) | |
| | ) | Case No. 1:21-cv-00280 |
| Plaintiffs, | ) ) | Hon. Judge Edmond E. Chang |
| v. | ) ) | Magistrate Judge M. David Weisman |
| PEOPLECONNECT, INC., a Delaware corporation, and INTELIUS LLC, a Delaware limited liability company, | ) ) ) ) | |
| Defendants. | ) ) | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(B)(2), 12(B)(3), AND 12(B)(6)**

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

BACKGROUND FACTS AND PLAINTIFFS' MATERIAL ALLEGATIONS ......................... 2

ARGUMENT .................................................................................................................... 3

I.  Plaintiffs Agreed To Arbitrate Their Claim................................................................ 3

    A.  A Valid Arbitration Agreement Exists Between Plaintiffs And Defendants. ................. 3

        1.  Intelius Users Are Bound By The Terms Of Service................................................. 3

        2.  Plaintiffs Agreed To The Terms Of Use Through Their Counsel............................ 4

    B.  The Arbitrator Must Decide If This Dispute Is Subject To Arbitration. .......................... 6

II.  The Communications Decency Act Bars Plaintiffs' Claim. .......................................... 6

III.  Plaintiffs Have Failed To State A Claim Under IRPA. ................................................ 9

    A.  Plaintiffs Fail To Plead Conduct Within The Territorial Scope Of IRPA. ..................... 9

    B.  Plaintiffs Fail To Plead A *Prima Facie* IRPA Claim. ................................................... 10

        1.  Plaintiffs Fail To Plead A Public Use Or Holding Out Of Their Identities. ........... 11

        2.  Plaintiffs Fail To Plead That Intelius Used Their Identity For A Commercial Purpose. .......................................................................................... 12

    C.  Plaintiffs' Claim Falls Within IRPA's Statutory Exemptions........................................ 14

        1.  IRPA Exemption 1 Bars Plaintiffs' Claim. ............................................................ 15

        2.  IRPA Exemption 2 Bars Plaintiffs' Claim. ............................................................ 17

IV.  Intelius's Alleged Conduct Is Protected By The U.S. Constitution. ..................................... 18

    A.  Intelius's Search Results Are Protected Speech Within The First Amendment. .......... 18

        1.  Plaintiffs' Proposed Content-Based Restriction On Non-Commercial Speech Triggers Strict Scrutiny........................................................................... 19

        2.  Even If The Conduct Alleged Were Commercial Speech, Plaintiffs Cannot Satisfy Intermediate Scrutiny. ............................................................................. 21

    B.  Applying IRPA To Search Results Violates The Dormant Commerce Clause............. 22

i

V.   The Court Lacks Personal Jurisdiction Over Defendants......................................................... 24

CONCLUSION............................................................................................................................ 25

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*ACLU v. Johnson*,
194 F.3d 1149 (10th Cir. 1999) ...............................................................23, 24

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*,
751 F.3d 796 (7th Cir. 2014) ...................................................................24, 25

*Am. Booksellers Found. v. Dean*,
342 F.3d 96 (2d Cir. 2003)...............................................................................23

*Am. Libraries Ass'n v. Pataki*,
969 F. Supp. 160 (S.D.N.Y. 1997) ..................................................................23

*Asset Allocation & Mgmt. Co. v. W. Emps. Ins. Co.*,
No. 88 C 4287, 1988 WL 139247 (N.D. Ill. Dec. 22, 1988) .............................5

*Avery v. State Farm Mut. Auto. Ins. Co.*,
216 Ill. 2d 100 (2005) ..................................................................................9, 10

*be2 LLC v. Ivanov*,
642 F.3d 555 (7th Cir. 2011) ...........................................................................24

*Ben Ezra, Weinstein, & Co. v. Am. Online Inc.*,
206 F.3d 980 (10th Cir. 2000) ...........................................................................7

*Best v. Berard*,
776 F. Supp. 2d 752 (N.D. Ill. 2011) ..............................................................17

*Blair v. Nevada Landing P'ship, RBG, LP*,
369 Ill. App. 3d 318 (2d Dist. 2006)................................................................11

*Blanton v. Womancare, Inc.*,
38 Cal. 3d 396 (1985) ...................................................................................5, 6

*Bogie v. Rosenberg*,
705 F.3d 603 (7th Cir. 2013) .....................................................................14, 17

*Bolger v. Youngs Drug Prod. Corp.*,
463 U.S. (1983)................................................................................................20

*Bristol-Myers Squibb Co. v. Superior Ct. of Cal. San Francisco Cty.*,
137 S. Ct. 1773 (2017).....................................................................................24

*Brooks v. Ross*,
  578 F.3d 574 (7th Cir. 2009) ...................................................................................7

*Callahan v. PeopleConnect, Inc.*,
  No. 20-CV-09203-EMC, 2021 WL 1979161 (N.D. Cal. May 18, 2021) ..................................5

*Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*,
  447 U.S. 557 (1980)...............................................................................................21, 22

*Cher v. Forum Int'l, Ltd.*,
  692 F.2d 634 (9th Cir. 1982) .................................................................................20

*Chi. Lawyers' Comm. for Civil Rights Under Law, Inc. v. Craigslist, Inc.*,
  519 F.3d 666 (7th Cir. 2008) ...................................................................................7

*Collier v. Murphy*,
  No. 02 C 2121, 2003 WL 1606637 (N.D. Ill. Mar. 26, 2003) ..........................................14, 16

*Commodity Trend Serv., Inc. v. Commodity Futures Trading Comm'n*,
  149 F.3d 679 (7th Cir. 1998) .................................................................................20, 21

*Cox Broad. Corp. v. Cohn*,
  420 U.S. 469 (1975)................................................................................................18

*Crooms v. Sw. Airlines Co.*,
  459 F. Supp. 3d 1041 (N.D. Ill. 2020) .....................................................................6

*Dean Witter Reynolds, Inc. v. Byrd*,
  470 U.S. 213 (1985)................................................................................................3

*Dex Media W., Inc. v. City of Seattle*,
  696 F.3d 952 (9th Cir. 2012) .................................................................................18

*Dobrowolski v. Intelius, Inc.*,
  No. 17 CV 1406, 2018 WL 11185289 (N.D. Ill. May 21, 2018)..........................1, 12, 13, 14

*Esch v. Universal Pictures Co., Inc.*,
  No. 6:09-cv-02258-JEO, 2010 WL 5600989 (N.D. Ala. Nov. 2, 2010)................................21

*Est. of Graham v. Sotheby's Inc.*,
  860 F. Supp. 2d 1117 (C.D. Cal. 2012) ...................................................................22

*F.T.C. v. Trudeau*,
  662 F.3d 947 (7th Cir. 2011) .................................................................................21

*Faulkenberg v. CB Tax Franchise Sys., LP*,
  637 F.3d 801 (7th Cir. 2011) .................................................................................4

*Feldman v. Google, Inc.*,
    513 F. Supp. 2d 229 (E.D. Pa. 2007) .......................................................................4

*Fiala v. Bickford Senior Living Grp., LLC*,
    32 N.E.3d 80 ...........................................................................................................5

*Force v. Facebook, Inc.*,
    934 F.3d 53 (2d Cir. 2019)...................................................................................7, 8

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
    141 S.Ct. 1017 (2021)...........................................................................................25

*Gionfriddo v. Major League Baseball*,
    94 Cal. App. 4th 400 (Cal. Ct. App. 2001) ...........................................................13

*Gonzalez v. Google*,
    No. 18-16700, 2021 WL 2546675 (9th Cir. June 22, 2021)....................................8

*Groden v. Random House, Inc.*,
    61 F 3d 1045 (2d Cir. 1995)..................................................................................21

*Gullen v. Facebook.com, Inc.*,
    No. 15 C 7681, 2016 WL 245910 (N.D. Ill. Jan. 21, 2016) ...........................24, 25

*Gupta v. Morgan Stanley Smith Barney, LLC*,
    934 F.3d 705 (7th Cir. 2019) .................................................................................5

*Hadley v. GateHouse Media Freeport Holdings, Inc.*,
    No. 12 C 1548, 2012 WL 2866463 (N.D. Ill. July 10, 2012) ..............................6, 7

*Hartman v. Lisle Park Dist.*,
    158 F. Supp. 2d 869 (N.D. Ill. 2001) .....................................................................4

*Health Sys. Agency of N. Va. v. Va. State Bd. of Med.*,
    424 F. Supp. 267 (E.D. Va. 1976) ........................................................................18

*Healy v. Beer Inst., Inc.*,
    491 U.S. 324 (1989)..............................................................................................22

*Hubbert v. Dell Corp.*
    359 Ill. App. 3d 976 (2005) ...................................................................................4

*Hui Ma v. Golden State Renaissance Ventures, LLC*,
    No. 3:21-CV-00856-WHO, 2021 WL 2190912 (N.D. Cal. May 31, 2021).........5, 6

*Huon v. Denton*,
    841 F.3d 733 (7th Cir. 2016) .................................................................................9

*Independent Living Resource Center San Francisco v. Uber Technologies, Inc.*,
   No. 18-cv-06503, 2019 WL 3430656 (N.D. Cal. July 30, 2019) ..............................................5

*J.S.T. Corp. v. Foxconn Interconnect Tech.*,
   965 F.3d 571 (7th Cir. 2020) ........................................................................................24, 25

*Jane Doe No. 1 v. Backpage.com, LLC*,
   817 F.3d 12 (1st Cir. 2016)..........................................................................................7

*Janiga v. Questar Cap. Corp.*,
   615 F.3d 735 (7th Cir. 2010) ......................................................................................4

*Johnson v. Uber Techs., Inc.*,
   No. 16 C 5468, 2018 WL 4503938 (N.D. Ill. Sept. 20, 2018)...................................3

*Kanbar v. O'Melveny & Myers*,
   849 F.Supp.2d 902 (N.D. Cal. 2011) ..........................................................................6

*Kimzey v. Yelp! Inc.*,
   836 F.3d 1263,1270 (9th Cir. 2016) ..........................................................................8

*Klayman v. Zuckerberg*,
   753 F.3d 1354 (D.C. Cir. 2014) .................................................................................8

*Landau v. CNA Fin. Corp.*,
   381 Ill. App. 3d 61 (1st Dist. 2008) ........................................................................10

*Liberi v. Taitz*,
   No. SACV 11-0485................................................................................................7

*Local TV, LLC v. Superior Ct.*,
   3 Cal. App. 5th 1 (Cal. Ct. App. 2016) ..................................................................13

*Lukis v. Whitepages Inc.*,
   454 F. Supp. 3d 746 (N.D. Ill. 2020) .............................................................9, 13, 14

*Lukis v. Whitepages Inc.*,
   No. 19 C 4871, 2020 WL 6287369, slip op. (N.D. Ill. Oct. 27, 2020) ...................16

*McQuiston v. Marsh*,
   790 F.2d 798 (9th Cir. 1986) ..................................................................................20

*Melena v. Anheuser-Busch, Inc.*,
   847 N.E.2d 99 (2006)...........................................................................................5, 6

*Miche Bag, LLC v. Be You, LLC*,
   No. 11-CV-720, 2011 WL 4449683 (N.D. Ill. Sept. 26, 2011) ...............................9

*Midwest Title Loans, Inc. v. Mills*,
  593 F.3d 660 (7th Cir. 2010) ...............................................................22, 24

*Montana v. San Jose Mercury News, Inc.*,
  34 Cal. App. 4th 790 (Cal. Ct. App. 1995) ...........................................21

*N. Grain Mktg., LLC v. Greving*,
  743 F.3d 487 (7th Cir. 2014) .................................................................24

*Namath v. Sports Illustrated*,
  363 N.Y.S.2d 276 (N.Y. Sup. Ct. 1975) ...............................................21

*Nat'l Paint & Coatings Ass'n v. City of Chicago*,
  45 F.3d 1124 (7th Cir. 1995) .................................................................23

*Nieman v. Versuslaw, Inc.*,
  No. 12-3104, 2012 WL 3201931 (C.D. Ill. Aug. 3, 2012) ...................13, 17, 18, 20

*Obado v. Magedson*,
  No. Civ. 13-2382 JAP, 2014 WL 3778261 (D.N.J. July 31, 2014) ...................7, 13

*Ostergren v. Cuccinelli*,
  615 F.3d 263 (4th Cir. 2010) .................................................................18, 19

*Page v. Something Weird Video*,
  960 F. Supp. 1438 (C.D. Cal. 1996) ......................................................21

*Pearson v. Edgar*,
  153 F.3d 397 (7th Cir. 1998) .................................................................21

*PSINet, Inc. v. Chapman*,
  362 F.3d 227 (4th Cir. 2004) .................................................................24

*Reed v. Town of Gilbert*,
  576 U.S. 155 (2015).................................................................................19

*Rent-A-Ctr., W., Inc. v. Jackson*,
  561 U.S. 63 (2010)...................................................................................6

*Rivera v. Google Inc.*,
  238 F. Supp. 3d 1088 (N.D. Ill. 2017) .................................................10

*Rogers v. Grimaldi*,
  875 F.2d 994 (2d Cir. 1989)...................................................................13

*Simoni v. Am. Media, Inc.*,
  No. cv 14-573, 2014 WL 12597640 (C.D. Cal. July 22, 2014)..............21

*Sorrell v. IMS Health Inc.*,
564 U.S. 552 (2011)..............................................................................18, 19

*Thompson v. Getty Images (US), Inc.*,
No. 13 C 1063, 2013 WL 3321612 (N.D. Ill. July 1, 2013) .................................11, 12, 14, 23

*Tompkins v. 23andMe, Inc.*,
No. 5:13-CV-05682-LHK, 2014 WL 2903752 (N.D. Cal. June 25, 2014) ............................4

*Treiber & Straub, Inc. v. U.P.S., Inc.*,
474 F.3d 379 (7th Cir. 2007) .............................................................................3

*Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*,
425 U.S. 748 (1976)........................................................................19, 20, 22

*Valley Air Serv. v. Southaire, Inc.*,
No. 06 C 782, 2009 WL 1033556 (N.D. Ill. Apr. 16, 2009).......................................10

*Vrdolyak v. Avvo, Inc.*,
206 F. Supp. 3d 1384 (N.D. Ill. 2016) .......................................................10, 18, 19

*Vulcan Golf, LLC v. Google Inc.*,
552 F. Supp. 2d 752 (N.D. Ill. 2008) .........................................................9, 10

*Willan v. Columbia Cnty.*,
280 F.3d 1160 (7th Cir. 2002) .............................................................................18

*William O'Neil & Co., Inc. v. Validea.com Inc.*,
202 F. Supp. 2d 1113 (C.D. Cal. 2002).....................................................................20

*Zeran v. Am. Online, Inc.*,
129 F.3d 327 (4th Cir. 1997) ...............................................................................8

**Statutes, Rules, and Other Authorities**

47 U.S.C. § 230..............................................................................................6, 8

765 ILCS 1075/5................................................................................................11

765 ILCS 1075/30.........................................................................................10, 11

765 ILCS 1075/35......................................................................................15, 16, 17

Ariz. Rev. Stat. § 12-761 ..................................................................................16

Cal. Civ. Code § 3344.1.......................................................................................16

Fed. R. Civ. P. 12................................................................................................3, 4, 24

Haw. Rev. Stat. § 482P-7 .......................................................................................16

Okla. Stat. Title 12, § 1448 ...................................................................................16

Tex. Prop. Code § 26.012 ......................................................................................16

Wash. Rev. Code § 63.60.070................................................................................16

J. Thomas McCarthy & Roger E. Schechter, *Rights of Publicity and Privacy* §
 6:3, Westlaw (2d ed. updated May 2020) ...........................................................23

## INTRODUCTION

Defendants PeopleConnect, Inc. and Intelius LLC (together "Intelius") operate a website that enables users to review public records information about queried individuals. These background reports facilitate a wide range of endeavors: from locating lost friends to reviewing property ownership data to locating social media accounts.

Plaintiffs do not fault Intelius for providing these reports. What they contend is unlawful is the search results list generated in response to the user's query, which the user then uses to determine if there are public records available about the person being searched. Of course, websites frequently enable searches for people or information on the modern internet. But Plaintiffs contend that because the Intelius search results display information about the searched person (such as name and city), the display of those results violate the Illinois Right of Publicity Act ("IRPA"). This is so, they argue, because those search results "advertise" Intelius's services.

Plaintiffs' suit goes nowhere for a simple reason—Plaintiffs are bound by Intelius's Terms of Service ("TOS") to resolve their disputes with Intelius in arbitration. Moreover, Plaintiffs' suit fails because it is meritless. Indeed, in 2018, Judge Shah dismissed a virtually identical suit against Intelius. *Dobrowolski v. Intelius, Inc.*, No. 17 CV 1406, 2018 WL 11185289, at *3 (N.D. Ill. May 21, 2018). There are multiple reasons this Court should do the same if it is not sent to arbitration— Section 230 of the Communications Decency Act ("CDA") bars Plaintiffs' claim, Plaintiffs have failed to state a claim under IRPA, both the First Amendment and the Commerce Clause foreclose their claim, and there is no basis for the Court to exercise personal jurisdiction over Intelius. At bottom, however, these failings all derive from the fact that the statutory right of publicity Illinois recognizes simply has nothing to do with Intelius informing users via search results whether it can provide a background report about the person a user is searching.

## BACKGROUND FACTS AND PLAINTIFFS' MATERIAL ALLEGATIONS

Intelius owns and operates www.intelius.com, a website that "sell[s] access" to "detailed reports" about people; these reports are "compiled" from third-party sources, including "public record repositories." Second Amended Complaint ("SAC") ¶¶ 1, 16. Plaintiffs do not allege it is in any way unlawful for Intelius to make or sell these sorts of reports. Instead, Plaintiffs have filed a one-count Complaint that takes issue with what users are able to encounter when they visit Intelius.com.

When a user visits Intelius.com, the website does not present a list of every individual about whom Intelius is able to compile information for a report. *See id.* ¶ 18. Instead, much like websites throughout the internet, Intilius.com includes a free search function. *Id.* ¶ 2. This allows users to perform a "search[] for an individual" so users can determine whether Intelius is able to collect public information about the searched individual. *Id.* ¶ 18. A search is performed when a user "typ[es] the individual's first and last name into the search bar." *Id.* ¶ 2. In response, and again only after the user initiates the search for a person, Intelius generates search results that provide "a list of the individuals found" that have the "same name" as the queried individual "alongside certain uniquely identifying information such as each individual's current age, location, and names of their immediate family members." *Id.* ¶ 18.

If a user decides that the search results located the correct person, the user can select a link titled "Open Report." *Id.* ¶ 19. The user then is taken to a separate webpage. *Id.* On that new page, the user is given the option to register to view "unlimited reports," including the background report of the searched for person. *Id.* A user also may elect to "obtain a report on [that] one specific individual." *Id.* ¶ 20.

Plaintiffs do not allege that anyone other than their lawyers has ever searched for their names, ever viewed a search result displaying their names, or ever clicked the "Open Report"

button next to their names. Nonetheless, they allege their identities have been "misappropriated" under IRPA because user-initiated searches might present their names and other identifying information next to an "Open Report" button that links to a webpage that "market[s] and promote[s] a monthly subscription to access unlimited reports on individuals in its database." *Id*. ¶ 21.

**ARGUMENT**

**I.      Plaintiffs Agreed To Arbitrate Their Claim.**

Plaintiffs are in the wrong forum. *See* Fed. R. Civ. P. 12(b)(3). The Federal Arbitration Act ("FAA") "mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). Here, Plaintiffs, through their legal counsel, agreed to the Intelius TOS, which binds Plaintiffs to the arbitration provision therein.

**A.      A Valid Arbitration Agreement Exists Between Plaintiffs And Defendants.**

**1.      Intelius Users Are Bound By The Terms Of Service.**

Courts regularly hold that clickwrap agreements—which require a user to electronically consent to a website's terms of service—constitute valid and enforceable contracts. *E.g.*, *Treiber & Straub, Inc. v. U.P.S., Inc.*, 474 F.3d 379, 381–82 (7th Cir. 2007); *Johnson v. Uber Techs.*, *Inc.*, No. 16 C 5468, 2018 WL 4503938, at *4 (N.D. Ill. Sept. 20, 2018). Intelius.com is a textbook example of an enforceable clickwrap agreement: before accessing the results of a search on Intelius.com, a user must click a button, below which appears a message indicating that doing so constitutes affirmative consent to the TOS. Declaration of Tara McGuane ("Decl.") ¶ 6, 7. The TOS are hyperlinked directly from that message and contain the following provision in bolded text: "**YOU AND THE PEOPLECONNECT ENTITIES EACH AGREE THAT ANY AND ALL DISPUTES THAT HAVE ARISEN OR MAY ARISE BETWEEN YOU AND THE**

3

PEOPLECONNECT ENTITIES SHALL BE RESOLVED EXCLUSIVELY THROUGH FINAL AND BINDING ARBITRATION, RATHER THAN IN COURT." Decl., Ex. 1, § 13.[1]

### 2.    Plaintiffs Agreed To The Terms Of Use Through Their Counsel.

The Complaint includes screenshots of sections of Intelius.com that are accessible only after accepting the TOS.[2] SAC. ¶ 18, 19; *see* Decl. ¶ 12. Had Plaintiffs run the searches necessary to generate those screenshots, they would be bound by the TOS. Decl. ¶ 12; *see Tompkins v. 23andMe, Inc.*, No. 5:13-CV-05682-LHK, 2014 WL 2903752, at *7 (N.D. Cal. June 25, 2014), *aff'd*, 840 F.3d 1016 (9th Cir. 2016) (access to portions of website requiring consent to terms of service sufficient to establish assent); *Feldman v. Google, Inc.*, 513 F. Supp. 2d 229, 237–38 (E.D. Pa. 2007) (same). The same result holds here, where Plaintiffs' counsel did so on Plaintiffs' behalf.[3] A lawyer is her client's "agent," *Hartman v. Lisle Park Dist.*, 158 F. Supp. 2d 869, 876−77 (N.D. Ill. 2001), and an "agent may bind a principal to an arbitration agreement" if acting "within the scope of their agency," *Janiga v. Questar Cap. Corp.*, 615 F.3d 735, 743 (7th Cir. 2010).

There is no question Plaintiffs' counsel searched for Plaintiffs' records to generate the screenshots that form the basis of Plaintiffs' claims—an activity "within the scope of [Plaintiffs' counsel's] agency." *Id.* Indeed, as discussed *infra*, had Plaintiffs' counsel not performed the

---

[1] The terms need not appear on the same page as the electronic consent to provide a user reasonable notice—they may be hyperlinked. *Hubbert v. Dell Corp.* 359 Ill. App. 3d 976, 987 (2005) (enforcing a clickwrap arbitration agreement where the phrase "Terms and Conditions of Sale" was hyperlinked to the full Terms of Service).

[2] Because a motion to compel arbitration is brought pursuant to Fed. R. Civ. P. 12(b)(3), the pleadings need not be accepted as true, and this Court may consider facts outside of the pleadings. *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 809–10 (7th Cir. 2011).

[3] If Plaintiffs dispute these facts or this Court is otherwise not inclined to compel arbitration on this record, Intelius requests leave to engage in limited discovery regarding (1) Plaintiffs' and their counsel's use of Intelius.com, and (2) Plaintiffs' knowledge of and acquiescence to their counsel's use of same. *See Indep. Living Res. Ctr. San Francisco v. Uber Techs., Inc.*, No. 18-cv-06503 (N.D. Cal. May 6, 2019), ECF No. 35 at 1 (denying motion to compel arbitration without prejudice, but granting "limited discovery" to "clarify the issue" of whether app "testers were Plaintiffs' agents").

searches, there would be no basis for Plaintiffs to allege that their information had ever been displayed on Intelius.com. Thus, "both [the] rights and obligations" of the TOS accrue to Plaintiffs, including the duty to arbitrate. *Asset Allocation & Mgmt. Co. v. W. Emps. Ins. Co.*, No. 88 C 4287, 1988 WL 139247, at *5 (N.D. Ill. Dec. 22, 1988); *see Fiala v. Bickford Senior Living Grp., LLC*, 32 N.E.3d 80, 91 (finding that agent could bind principal to arbitration).[4]

*Independent Living Resource Center San Francisco v. Uber Technologies, Inc.* is instructive. No. 18-CV-06503-RS, 2019 WL 3430656 (N.D. Cal. July 30, 2019). There, Uber moved to compel arbitration on the grounds that the plaintiffs' agent—a paralegal at the law office representing them—agreed to Uber's terms of service. *Id.* at *4. The court held that because the plaintiffs "dispatched their agents to affirmatively test the Uber application in order to bolster their claim of discrimination," the plaintiffs were "bound by the arbitration agreement to the same extent as their agent." *Id*. This case is no different. Plaintiffs "dispatched" their counsel to "affirmatively test [Intelius.com] in order to bolster" (indeed, create) their claim against Intelius. *Id*.

Under Illinois law, a lawyer is authorized to "take such action as is impliedly authorized to carry out the representation." Illinois Professional Conduct Rule 1.2(a). And in Illinois, the right to a jury only attaches "once it is determined that the litigation should proceed before a court. If the claims are properly before an arbitral forum pursuant to an arbitration agreement, the jury trial right vanishes." *Melena v. Anheuser-Busch, Inc.*, 847 N.E.2d 99, 108 (2006).[5] Thus, when

---

[4] Per the TOS, Plaintiffs' counsel could have opted out of the arbitration provision, but they did not do so. *See* McGuane Decl, Ex. 1, §13(D); *see also Gupta v. Morgan Stanley Smith Barney, LLC*, 934 F.3d 705, 713–16 (7th Cir. 2019) (failure to opt out indicates assent to arbitration).

[5] Plaintiffs likely will to point to the recent order in *Callahan v. PeopleConnect, Inc.*, No. 20-CV-09203-EMC, 2021 WL 1979161, at *5 (N.D. Cal. May 18, 2021). This is not persuasive. First, *Callahan* relies entirely on *Blanton v. Womancare, Inc.*, 38 Cal. 3d 396 (1985), which is not an Illinois decision and does not discuss or examine Illinois law. Furthermore, *Callahan* ignores other California decisions, specifically *Indep. Living Res. Ctr.*, which is better reasoned and aligns with the weight of California authority. *See Hui Ma v. Golden State Renaissance Ventures, LLC*, No.

Plaintiffs' counsel agreed to arbitrate on their clients' behalf, the clients' right to a jury trial had not yet vested and could be waived.

### B.    The Arbitrator Must Decide If This Dispute Is Subject To Arbitration.

Once this Court determines there is a valid and enforceable agreement, this Court must compel Plaintiffs to arbitration and allow the arbitrator to decide whether Plaintiffs' disputes fall within the scope of the TOS because the TOS contain a "delegation provision"—one that delegates issues of arbitrability to the arbitrator. As such, the FAA requires a court to "compel[] arbitration" of that threshold issue. *Rent-A-Ctr.*, *W., Inc. v. Jackson*, 561 U.S. 63, 68–70 & n.1 (2010). Courts in this district have held that the "incorporation of AAA [American Arbitration Association] Rules delegates arbitrability decisions to the arbitrator," *Crooms v. Sw. Airlines Co.*, 459 F. Supp. 3d 1041, 1055 (N.D. Ill. 2020) (citation omitted), and the TOS expressly state the arbitration will be governed by the AAA consumer arbitration rules. Decl., Ex. 1, § 13(B).

## II.    The Communications Decency Act Bars Plaintiffs' Claim.

Plaintiffs' claim also is barred by the CDA. Section 230 of the CDA states that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). The statute, "while not granting blanket immunity to interactive computer services, defines who can be called a 'publisher' for purposes of civil liability." *Hadley v. GateHouse Media Freeport Holdings, Inc.*, No. 12 C 1548, 2012 WL 2866463, at *1 (N.D. Ill. July 10, 2012). Section 230 thus bars any

---

3:21-CV-00856-WHO, 2021 WL 2190912, at *4 (N.D. Cal. May 31, 2021). *Second, Blanton* is also easily distinguished—there, the plaintiff's attorney agreed to arbitrate *two days* before trial and against his client's express instructions and agreed to severely limited damages and a defense counsel arbitrator. 38 Cal. 3d at 399. Here, Plaintiffs' counsel agreed to arbitrate in the course of creating Plaintiffs' claim, before the attachment of any jury trial right, and there are no damages limitations. *See Melena,* 847 N.E.2d at 108; *see also Kanbar v. O'Melveny & Myers*, 849 F.Supp.2d 902, 912–13 (N.D. Cal. 2011) (decision by *Callahan* judge holding that *Blanton* does not apply unless plaintiff instructed attorney not to agree to arbitration).

claim that would require: (1) "an online information system" to (2) "'be treated as the publisher or speaker'" of (3) "'any information provided by' someone else." *Chi. Lawyers' Comm. for Civil Rights Under Law, Inc. v. Craigslist, Inc.*, 519 F.3d 666, 671 (7th Cir. 2008) (citation omitted). Notably, at least two other courts have applied these factors to conclude that Section 230 bars certain claims against Intelius. *Liberi v. Taitz*, No. SACV 11-0485 AGAJWX, 2011 WL 13315691, at *11 (C.D. Cal. Oct. 17, 2011); *Obado v. Magedson*, No. Civ. 13-2382 JAP, 2014 WL 3778261, at *7 (D.N.J. July 31, 2014), *aff'd*, 612 F. App'x 90 (3d Cir. 2015).[6]

*First*, Intelius is an "online information system" under Section 230 because, as Plaintiffs allege, it owns and operates a public website. *See* SAC ¶ 1; *Hadley*, 2012 WL 2866463, at *2.

*Second*, because Plaintiffs' claim is premised on Intelius's distribution of content, SAC ¶¶ 1–3, 15–16, 24, 25, their claim treats Intelius as a "publisher." *See Chi. Lawyers' Comm.*, 519 F.3d at 671; *see also Ben Ezra, Weinstein, & Co. v. Am. Online Inc.*, 206 F.3d 980, 983, 985–86 (10th Cir. 2000). This is so because Plaintiffs' claim is based on the way in which Intelius displays information on Intelius.com. *See Force v. Facebook, Inc.*, 934 F.3d 53, 66 (2d Cir. 2019) (Facebook is a "publisher" because it chooses where "third-party content should reside and to whom it should be shown"); *Jane Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12, 21 (1st Cir. 2016) (Backpage is a "publisher" because claims "address the structure and operation of the Backpage website . . . [and] how to treat postings").

*Third*, for purposes of Plaintiffs' claim, Intelius was a publisher of "information provided by someone else." *Chi. Lawyers' Comm.*, 519 F.3d at 671 (citation omitted). That is clear from Plaintiffs' Complaint, in which they allege that Intelius "compile[s]" the reports from other

---

[6] While the Seventh Circuit has held that Section 230 is an affirmative defense, dismissal is appropriate at the motion to dismiss stage where, as here, the allegations of the Complaint establish the elements of the defense. *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009).

sources—namely, "databases and public record repositories." SAC. ¶ 16. It makes no difference that Plaintiffs claim that Intelius uses this third-party information in what they (erroneously) call advertisements. That is because "disseminating the same content in essentially the same format … does not change the origin of the third-party content." *Kimzey v. Yelp! Inc.*, 836 F.3d 1263,1270 (9th Cir. 2016). What matters is that Intelius did not "provide[], create[], or develop[] any portion of the content that [Plaintiffs] allege harmed" them; instead, it published information "provided by third part[ies]." *Klayman v. Zuckerberg*, 753 F.3d 1354, 1358 (D.C. Cir. 2014); *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 331–32 (4th Cir. 1997); *Force*, 934 F.3d at 65.

But that is not all. In this case, Plaintiffs uniquely seek to hold Intelius liable for search results that display *only* in response to a user's search. That moves their claim further into Section 230's core. In this respect, Plaintiffs' claim differs from a traditional right of publicity claim. This is not a case in which a defendant has erected a billboard or created a television advertisement that presents Plaintiffs' likeness to the world without their consent. Here, the supposedly impermissible publication of Plaintiffs' information does not appear *at all* on Intelius.com unless and until a user inputs their names to search. For purposes of Section 230, it thus is significant that what appears on Intelius.com, at least as is relevant to Plaintiffs' claim that their identities have been misappropriated for profit, depends entirely on "information provided by" users. *See* 47 U.S.C. § 230(c)(1). It means Intelius is publishing material "provided by somebody else." *Gonzalez v. Google*, No. 18-16700, 2021 WL 2546675, at *15, *35 (9th Cir. June 22, 2021) (holding that Section 230 immunized Google for "recommend[ing] content" when "a user's voluntary actions inform Google about that user's preferences for the types of videos and advertisements the user would like to see").

In response, Plaintiffs likely will point to *Lukis v. Whitepages Inc.*, which denied Section 230 protection because "[Whitepages] is alleged to have actively compiled and collated, from several sources, information regarding [the plaintiff]." 454 F. Supp. 3d 746, 763 (N.D. Ill. 2020). Intelius respectfully submits that Lukis is out of step with the prevailing precedent discussed above. Indeed, *Lukis* relies heavily on *Huon v. Denton*, 841 F.3d 733 (7th Cir. 2016), which is a fundamentally different case. The crucial allegation in *Huon* was that "at least some of the allegedly defamatory comments were *authored by* Gawker employees." *Id.* at 743 (emphasis added). Plaintiffs have alleged no such authorship. Nor could they. As Plaintiffs allege, the reports simply collect biographical data from public records. SAC ¶ 16.

## III. Plaintiffs Have Failed To State A Claim Under IRPA.

### A. Plaintiffs Fail To Plead Conduct Within The Territorial Scope Of IRPA.

Plaintiffs fail to plead a claim within IRPA's territorial scope. As a matter of Illinois law, a "statute is without extraterritorial effect unless a clear intent . . . appears from the express provisions of the statute;" nothing in IRPA conveys such an intent.[7] *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 184–85 (2005) (citation omitted). When a statute does not apply extraterritorially, a plaintiff must plead that the alleged violation occurred in Illinois. *E.g. Vulcan Golf, LLC v. Google Inc.*, 552 F. Supp. 2d 752, 775 (N.D. Ill. 2008); *Miche Bag, LLC v. Be You, LLC*, No. 11-CV-720, 2011 WL 4449683, at *6 (N.D. Ill. Sept. 26, 2011). An alleged violation only "may be said to take place within [Illinois] if the circumstances relating to the transaction occur[red] *primarily and substantially*" in Illinois. *Avery*, 216 Ill. 2d at 186 (emphasis added);

---

[7] Legislative history confirms IRPA was not intended to apply extraterritorially. The bill's sponsor, Rep. Turner, noted that liability under IRPA would be available only for "*the use* of that person's image [or likeness] *here in Illinois*." HB 1422, 90th Gen. Assemb., 49th Leg. House Proceedings, Tr. of House Debate 228 (Ill. Apr. 24, 1997) (statement of Rep. A. Turner) (emphasis added).

*Landau v. CNA Fin. Corp.*, 381 Ill. App. 3d 61, 65 (1st Dist. 2008) (nothing that the "majority of circumstances relating to the alleged violation" must have occurred in Illinois).

Plaintiffs' allegations do not come close to clearing that bar. All they allege is that because they are Illinois citizens, the "unlawful conduct alleged in the Complaint occurred in and emanated from this District." SAC ¶ 10. This is not enough. *Avery*, 216 Ill. 2d at 186; *see Vulcan Golf*, 552 F. Supp. 2d at 775; *Valley Air Serv. v. Southaire, Inc.*, No. 06 C 782, 2009 WL 1033556, at *12–13 (N.D. Ill. Apr. 16, 2009). Indeed, nothing about the viability of an IRPA violation turns on whether the claimant is or is not an Illinois citizen. The *sine qua non* of an IRPA violation is the *actual* (as opposed to theoretical) publication of a person's likeness. So for a claim to be within IRPA's territorial scope, that publication must occur in Illinois. For that to occur, the user must be physically located *in Illinois*. Because Plaintiffs failed to plead that anyone who viewed their data was actually in Illinois when they did so, they have failed to allege an IRPA violation.[8]

### B.     Plaintiffs Fail To Plead A *Prima Facie* IRPA Claim.

To plead a *prima facie* claim under IRPA, a plaintiff must allege: "(1) the use of his identity; (2) for commercial purposes; and (3) without his consent." *Vrdolyak v. Avvo, Inc.*, 206 F. Supp. 3d 1384, 1386 (N.D. Ill. 2016) (citation omitted); *see* 765 ILCS 1075/30(a). Plaintiffs have failed to plead the first two of these elements.[9]

---

[8] This case is unlike *Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1104 (N.D. Ill. 2017), where this Court declined to consider issues of extraterritoriality on a motion to dismiss in the Biometric and Information Privacy Act ("BIPA") context. In *Rivera*, the plaintiffs alleged *conduct* that by its nature occurred entirely in Illinois—specifically, that the plaintiffs had taken photos in Illinois containing their biometric information, and, while still in Illinois, uploaded those photos to Google, which harvested that biometric information from those photos. *Id.*; *see also* Complaint, *Rivera*, 1:16-cv-02714, ECF No. 1. There are no analogous allegations here.

[9] For the purposes of this motion alone, Intelius accepts Plaintiffs' allegation that they did not consent as well-pled.

1.      **Plaintiffs Fail To Plead A Public Use Or Holding Out Of Their Identities.**

Plaintiffs must allege a "use" of their identities—specifically "the *public* use or *holding out of* [her] identity." 765 ILCS 1075/5 (emphasis added); *id*. 1075/30(a). This requires an allegation that Intelius actually disseminated their identities. *See Blair v. Nevada Landing P'ship, RBG, LP*, 369 Ill. App. 3d 318, 324–25 (2d Dist. 2006). Yet all Plaintiffs allege is that they "discovered that Defendants were using [their] identit[ies]" on Intelius.com. SAC ¶ 24, 28. They do not identify *who,* if anyone, viewed their identities. That is crucial because if the only person to have run a search for Plaintiffs' names and viewed a search result containing their information is their own attorney, then they have not stated a violation of IRPA. A self-generated, nonpublic "use" of a person's identity is not actionable—certainly nothing on the face of IRPA or in its legislative history suggests it applies if a defendant shows a plaintiff *her* identity *to her alone* in response to *an inquiry from her*.

To the contrary, IRPA's purpose is to address a circumstance antithetical to the self-imposed, wholly private "use" alleged here: the public use of a person's identity in a false or misleading endorsement of a product. During the Illinois General Assembly's debate over IRPA, representatives "cited examples of the kind of commercial uses that the IRPA is meant to address." *Thompson v. Getty Images (US), Inc.*, No. 13 C 1063, 2013 WL 3321612, at *2 (N.D. Ill. July 1, 2013). Every example involved a public-facing use of someone's identity that would necessarily be viewed by someone other than the depicted person. HB 1422, 90th Gen. Assemb., 49th Leg. House Proceedings, Tr. of House Debate 7–8 (Ill. May 21, 1998) (statement of Rep. Black); *supra* note 4, 90th Gen. Assemb., House Proceedings, Tr. of House Debate 227 (noting as examples an ad using a legislator's picture on the back of a bus "indicating that he endorsed" a hair tonic and a

11

"commercial" depicting "Fred Astaire dancing with a vacuum"). Because Plaintiffs have not alleged any such public 'use,'" their IRPA claim fails.

> **2.      Plaintiffs Fail To Plead That Intelius Used Their Identity For A Commercial Purpose.**

Plaintiffs allege that Intelius used their identities for a commercial purpose by displaying their names and other identifying information in a search result generated by an Intelius user. SAC ¶¶ 2, 24–25, 28–29. The lynchpin to the claim is their bald assertion that the search result is an "advertisement" for an Intelius "monthly subscription" which includes access to the searched for individual's report. SAC ¶¶ 20, 26, 30.

Many courts have found that websites, including Intelius, categorically do not use a person's identity for a "commercial purpose" simply by identifying the person as the subject of a work or online record in response to a user query. *Dobrowolski* is on point, holding that materially identical allegations against Intelius did not allege a "commercial purpose." 2018 WL 11185289, at *3. The court explained that Intelius's search results list "reports on different individuals with the searched name" so the consumer could "identify the correct individual out of a list of people who shared the same first and last names," and the search results page included additional information about each listed individual, such as their ages and cities of residence. *Id.* at *1. This, the court held, fails to state an IRPA claim because "[t]he plaintiffs' identities are not used to promote a separate product—they are used because plaintiffs' identities are part of the product offered for sale." *Id.* at *3.

*Dobrowlowski* reflects that "IRPA prohibits the use of an individual's image [or identity] to promote or entice the purchase of *some other product*," but does not prohibit using an individual's identity when "a photograph" or another work about the person is the very thing the consumer "is considering whether to buy." *Thompson*, 2013 WL 3321612, at *2 (emphasis added).

Thus, alleged advertisements only are actionable when the plaintiff's identity is used, without consent, to promote a product that is "wholly unrelated to the individual." *Rogers v. Grimaldi;* 875 F.2d 994, 1004 (2d Cir. 1989) (quotation marks omitted); *Gionfriddo v. Major League Baseball*, 94 Cal. App. 4th 400, 413 (Cal. Ct. App. 2001); *Local TV, LLC v. Superior Ct.*, 3 Cal. App. 5th 1, 9 (Cal. Ct. App. 2016). *Nieman v. Versuslaw, Inc.* is particularly instructive on this point. No. 12-3104, 2012 WL 3201931 (C.D. Ill. Aug. 3, 2012), *aff'd*, 512 F. App'x 635 (7th Cir. 2013). There, the plaintiff sued an online database of court records claiming the website violated IRPA by displaying his name in "online search results" and "linking copies of documents" to him which a user could then access for a fee. 512 F. App'x at 636–37. The court rejected this theory: "[p]laintiff's identity is not being used for a 'commercial purpose' . . . because his name is used only to find documents related to his case …. His name is not being . . . used to entice anyone to buy a product." 2012 WL 3201931, at *4; *accord Obado*,, 2014 WL 3778261, at *7 ("The mere appearance of [p]laintiff's name or image as part of the search results displayed in response to a user-generated query does not mean that the relevant company used [p]laintiff'[s] name for advertising or trade purposes."). The same is true here.

In response, Plaintiffs likely will cite to *Lukis*, which tries to distinguish *Dobrowolski* and similar authorities on the theory that the plaintiff in *Lukis* alleged the defendant was "advertis[ing]" a "separate product" from the underlying background report—a "subscription service." 454 F. Supp. 3d at 760–61 (citation omitted). But that theory fails here because Intelius's subscription service *includes* access to the searched for individual's report, not a wholly unrelated product. *Dobrowolski*, 2018 WL 11185289, at *3. Thus search results do not have a commercial purpose if they are "*part* of the product offered for sale," *Id.* (emphasis added). Although *Lukis* suggests that under *Dobrowolski* the search results have a commercial purpose under IRPA unless they promote

"*the entire product or service* being advertised," 454 F. Supp. 3d at 761 (emphasis added), that simply is not correct *Dobrowolski's* holding and Lukis cites no other authority for this "entire product or service" test. None exists. *See Thompson*, 2013 WL 3321612, at *2 (IRPA prohibits use of identity "to promote or entice the purchase of some other product" but not a product the consumer "is considering whether to buy"). As Plaintiffs acknowledge, the "product" Intelius sells are background "reports about people," and the subscription is one way of buying these reports— not a subscription to a product or service separate and apart from the reports. SAC ¶¶ 1–2.

In all events, the screenshots of the search results included in the Complaint refute that the search results are advertisements. The screenshots show that after a user types in a first and last name, Intelius.com reflects the searched name back to the user to confirm whether Intelius can prepare a background report for that person. *Id.* If the user clicks "Open Report," the user then is taken to an entirely *different* page that provides the option to register for an Intelius subscription. *Id*. at 19. So what the Complaint shows is that there simply is nothing on Intelius.com that uses Plaintiffs' likenesses that can be fairly characterized as "advertising." Plaintiffs cannot run from these facts shown in the screenshots by pleading conclusory allegations to the contrary. *See Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) (noting that if "an exhibit incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls").

### C.     Plaintiffs' Claim Falls Within IRPA's Statutory Exemptions.

To "avoid[] . . . serious First Amendment problems," IRPA carves out various uses of an individual's identity to which IRPA does not apply. *Collier v. Murphy*, No. 02 C 2121, 2003 WL 1606637, at *3 (N.D. Ill. Mar. 26, 2003). Three of the relevant carve outs are: (i) Section 35(b)(1) ("Exemption 1") exempts any "book," "article," or "other [] visual … work" that "portray[s] [or] describe[s]" an individual; (ii) Section 35(b)(2) ("Exemption 2") exempts any use of a person's identity for "non-commercial purposes, including any news [or] public affairs…"; and (iii) Section

14

35(b)(4) ("Exemption 4") exempts any "advertisements . . . for a use described under" the preceding exemptions. 765 ILCS 1075/35. The Court should dismiss Plaintiffs' claim under these exemptions for the same reason the Illinois legislature included them—doing so avoids the "serious First Amendment problems" inherent in Plaintiffs' claim.

### 1.    IRPA Exemption 1 Bars Plaintiffs' Claim.

Intelius's background reports fall under Exemption 1 because they are a "book," "article," or "other [] visual . . . work" that "portray[s] [or] describe[s]" an individual. 765 ILCS 1075/35(b)(1). Each background report is a written, visual document that provides biographical information to a reader about a particular person. *See* SAC ¶ 17. Each report could be viewed as a separate "article," or Intelius could be viewed as an online encyclopedia (a "book") comprised of millions of biographical articles, or the reports could be viewed as some "other" type of "visual … work." 765 ILCS 1075/35(b)(1).

Because the reports are covered by Exemption 1, the search results fall under Exemption 4, even if one accepts the Complaint's characterization of them as "advertisements." Exemption 4 excludes claims based on the use of an individual's identity in an advertisement for an activity protected under Exemption 1. 765 ILCS 1075/35(b)(4). This exemption makes sense, particularly so in the context of internet websites. It is common for websites to respond to user-generated queries with previews of a product a merchant hopes to sell through its internet site. Exemption 4 is consistent with the fact that Illinois did not endeavor to stamp out so fundamental an aspect of modern internet commerce.

Plaintiffs likely will cite *Lukis* to argue that Exemption 1 does not apply (and Exemption 4 thus does not come into play). But *Lukis*'s reasoning rests on a novel interpretation of Exemption 1 that is contrary to other opinions. Exemption 1 states that IRPA does not apply to "a single and original work of fine art, play, book, article, musical work, film, radio, television, or other audio,

visual, or audio-visual work." 765 ILCS 1075/35(b)(1). Citing the "single and original" modifier of "work of fine art," *Lukis* held that a "book," "article," or "other [] visual . . . work" must also be "single and original" and that the defendants' background reports were not. *Lukis v. Whitepages Inc.*, No. 19 C 4871, 2020 WL 6287369, slip op. at *4–5 (N.D. Ill. Oct. 27, 2020). But, as other courts have held, the grammar and legislative intent of Exemption 1 make clear that the term "single and original" modifies only "work of fine art" and not the other works that follow it— which, by their nature, are not "single" or necessarily "original." *E.g. Collier*, 2003 WL 1606637, at *3 (holding that it would "violate the rules of grammar," "nullify the exemption" and "do violence to common sense" to apply the modifier for "work of fine art" to the list of other exempted works). *Lukis* cited no authority for its reading of Exemption 1, and Intelius is aware of none.

The flaw in *Lukis*'s interpretation of "single and original" is even more glaring when compared to other states' right of publicity statutes. At least six such statutes use the term "single and original," and each unambiguously uses it to refer only to "works of fine art."[10] These statutes illustrate that "single and original" is a standardized term legislatures incorporate into right of publicity laws to describe "works of fine art." It is not plausible that the Illinois General Assembly intended to break from its sister states' consistent usage and alter this term by applying it to *each* exempted type of work. And it is doubly implausible that the General Assembly would do so in a way that is ungrammatical or without leaving any hint of such an intention in the legislative record.

Yet, even if *Lukis*'s reading of Exemption 1 were correct, Intelius's background reports *are* "single and original." The Complaint alleges that Intelius generates its background reports by

---

[10] *E.g.*, Wash. Rev. Code § 63.60.070(2)(a); Ariz. Rev. Stat. § 12-761(H)(1); Cal. Civ. Code § 3344.1(a)(2); Haw. Rev. Stat. § 482P-7(b)(1); Okla. Stat. tit. 12, § 1448(N)(3); Tex. Prop. Code § 26.012(a)(4).

"compil[ing]" records from "databases and public record repositories." SAC ¶ 16. That satisfies Exemption 1, even under the erroneous view of IRPA embraced by *Lukis*.

### 2.   IRPA Exemption 2 Bars Plaintiffs' Claim.

Intelius's background reports also fall within Exemption 2. That is, the reports use an individual's identity for "non-commercial purposes, including any news [or] public affairs" under Section 35(b)(2). They do so, most fundamentally because they provide biographical information without proposing any sort of commercial transaction. That is paradigmatic of using an individual's identity for "non-commercial purposes." 765 ILCS 1075/35(b)(2). The background reports independently fall under Exemption 2 because they serve a "news [or] public affairs" purpose. *Id.* As the Seventh Circuit has explained, "[t]he newsworthiness or public interest exception should be construed broadly, covering . . . any subject of public interest." *Bogie*, 705 F.3d at 614 (citation omitted) (affirming dismissal of Wisconsin right of publicity claim). Courts thus have dismissed IRPA claims under Exemption 2 where the allegedly infringing work contained information related to criminal records and proceedings, even when no public figure or journalistic context was involved. *E.g.*, *Best v. Berard*, 776 F. Supp. 2d 752, 758 (N.D. Ill. 2011); *see Nieman*, 512 F. App'x at 638. Here, and as Plaintiffs acknowledge, the reports themselves contain information from "public record[s]," SAC ¶ 16, including "criminal history." *Id.* ¶ 17. That satisfies the public interest criteria of Exemption 2. *See Best*, 776 F. Supp. 2d at 758–59. Again, because the reports themselves are protected by Exemption 2, Exemption 4 bars Plaintiffs' attempt to impose liability for any purported "advertisements" for those reports based upon the use of identifying information in those supposed advertisements. *See* 765 ILCS 1075/35(b)(4). That suffices to bar Plaintiffs' claim in its entirety.

**IV.    Intelius's Alleged Conduct Is Protected By The U.S. Constitution.**

Plaintiffs' claims are not viable for an additional reason. Applying IRPA here violates at least two provisions of the U.S. Constitution.

**A.    Intelius's Search Results Are Protected Speech Within The First Amendment.**

"[T]he creation and dissemination of information are speech within the meaning of the First Amendment." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 570 (2011). Courts thus have held that the First Amendment protects directories of names, addresses, phone numbers, and other identifying information. *E.g.*, *Dex Media W., Inc. v. City of Seattle*, 696 F.3d 952, 954 (9th Cir. 2012) ("[Y]ellow pages directories qualify for full protection under the First Amendment."); *Health Sys. Agency of N. Va. v. Va. State Bd. of Med.*, 424 F. Supp. 267, 272–73 (E.D. Va. 1976) (publication of physician information, including name and phone number protected).

The material Plaintiffs seek to suppress unquestionably constitutes protected speech. The Complaint alleges that Intelius provides a "list of the individuals" and their "name," "age," "current city and state of residence," and "relatives" that are "found" in response to a user query in the search engine on Intelius's homepage. SAC ¶¶ 2, 18. This is the sort of factual information the First Amendment protects. *Sorrell*, 564 U.S. at 570. From a constitutional perspective, there is no distinction between Intelius's search results and a yellow pages directory, *Dex*, 696 F.3d at 962, a directory of attorney information, *Vrdolyak*, 206 F. Supp. 3d at 1389, or a physician directory, *Health Sys. Agency*, 424 F. Supp. at 272.

What is more, the Seventh Circuit has emphasized that particularly sacrosanct is the publication of information already in the public domain. *Nieman*, 512 F. App'x at 638 (dismissing IRPA clam); *see Willan v. Columbia Cnty.*, 280 F.3d 1160, 1163 (7th Cir. 2002). Indeed, it is axiomatic that the First Amendment protects the dissemination of information drawn from public records. *E.g.*, *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 495 (1975); *see also Ostergren v.*

*Cuccinelli*, 615 F.3d 263, 286–87 (4th Cir. 2010). The Plaintiffs' name, location, age, and possible relatives is exactly the type of information that is by its very nature in the public domain and commonly found in public records. *See Vrdolyak*, 206 F. Supp. 3d at 1386, 1389 (holding that First Amendment precludes IRPA liability for online directory of attorneys with identifying "information gleaned from public records"). Thus, Intelius's display of this information is subject to full First Amendment protection.

**1.    Plaintiffs' Proposed Content-Based Restriction On Non-Commercial Speech Triggers Strict Scrutiny.**

Plaintiffs' proposed application of IRPA to protected First Amendment speech amounts to a content-based restriction, to which strict scrutiny applies. *Reed v. Town of Gilbert*, 576 U.S. 155, 163–64 (2015); *see Vrdolyak*, 206 F. Supp. 3d at 1389. Under strict scrutiny, laws restricting content are "presumptively unconstitutional" and must be "narrowly tailored to serve compelling state interests" to survive. *Reed*, 576 U.S. at 163; *see Sorrell*, 564 U.S. at 571 (fact that law is content-based is "all but dispositive"). Here, Plaintiffs cannot show that applying IRPA to Intelius's search results serves a compelling state interest, let alone that it is narrowly tailored.

Because Plaintiffs cannot overcome strict scrutiny, Plaintiffs likely will argue the search results are subject to the less demanding review associated with regulations of commercial speech. But that is incorrect. Commercial speech is speech that "does no more than propose a commercial transaction," *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 776 (1976), and the search results do not "propose a commercial transaction" at all. *Id*. Only one of the screenshots in the Complaint even mentions a commercial transaction. SAC ¶ 19. And in that instance, the information is not part of the proposal. *Id*.

Moreover, even if they also propose a commercial transaction, the search results primary purpose is non-commercial—to disseminate factual information about searched individuals.

19

Plaintiffs acknowledge as much. They allege that the search results page "show[s] potential customers that Defendants' database contains detailed reports for the *specific* individual they searched for." *Id.* ¶ 2 (emphasis in original). And if that were not enough, this dissemination amounts to the republication of factual information available in public records. As the Seventh Circuit has held, claims based on such "republication . . . are barred by the First Amendment privilege." *Nieman*, 512 F. App'x at 638. So even if Plaintiffs were correct that there is a commercial component to the speech at issue, though they are not, they certainly cannot plausibly assert that the search results do nothing more than propose a commercial transaction. *See Va. State Bd. of Pharmacy*, 425 U.S. at 776.

Finally, even if Plaintiffs' characterization of Intelius's search results as nothing more than "advertisements" were correct (it is not), such advertisements still are protected. That is because advertising that "is 'merely an adjunct of the protected publication and promotes only the protected promotion,' it is entitled to First Amendment protection to the extent as the underlying publication." *William O'Neil & Co., Inc. v. Validea.com Inc.*, 202 F. Supp. 2d 1113, 1119 (C.D. Cal. 2002) (quoting *Cher v. Forum Int'l, Ltd.*, 692 F.2d 634, 637–39 (9th Cir. 1982), *abrogated on other grounds as recognized in McQuiston v. Marsh*, 790 F.2d 798, 801 (9th Cir. 1986)); *see also Bolger v. Youngs Drug Prod. Corp.*, 463 U.S. at 66–67 & n.14 (1983) ("The mere fact that these pamphlets are conceded to be advertisements clearly does not compel the conclusion that they are commercial speech," and where pamphlets advertise speech protected by the First Amendment they should be deemed non-commercial speech); *Commodity Trend Serv., Inc. v. Commodity Futures Trading Comm'n*, 149 F.3d 679, 685 (7th Cir. 1998) ("A speaker's publication

20

does not lose its status as protected speech simply because the speaker advertises" it.).[11] This principle derives from the fact that courts must "ensure that First Amendment-protected expression is not unduly chilled by the threat of tort actions that would otherwise prevent the truthful promotion of expressive works." *Simoni v. Am. Media, Inc.*, case no. cv 14-573, 2014 WL 12597640, at *2 (C.D. Cal. July 22, 2014) (quotation omitted). Here, there is no question that the Intelius reports are protected speech. And while Plaintiffs argue that the search results advertise Intelius's "unlimited" subscription service rather than the constitutionally protected reports themselves, SAC ¶ 21, as discussed above, there is nothing to this distinction.

### 2. Even If The Conduct Alleged Were Commercial Speech, Plaintiffs Cannot Satisfy Intermediate Scrutiny.

If Intelius's speech were commercial, any restrictions imposed by IRPA still must survive intermediate scrutiny. *See F.T.C. v. Trudeau*, 662 F.3d 947, 953 (7th Cir. 2011). To survive intermediate scrutiny, a restriction must satisfy the following: "(1) there is a substantial interest supporting the restriction, (2) the restriction directly advances that substantial interest, and (3) the restriction is 'narrowly drawn.'" *Id.* (quoting *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557, 564–65 (1980)). The Seventh Circuit analyzes the second and third prongs together, asking if there is a "'reasonable fit'" between the restriction on the speech at issue and the "goal to be achieved by that restriction." *Pearson v. Edgar*, 153 F.3d 397, 401, 402–03 (7th Cir. 1998) (citation omitted).

---

[11] *Accord Namath v. Sports Illustrated*, 363 N.Y.S.2d 276, 278–80 (N.Y. Sup. Ct. 1975) (magazine's use of Joe Namath's identity to advertise subscription protected by First Amendment), *aff'd*, 371 N.Y.S.2d 10 (N.Y. App. Div. 1st Dep't 1975), *aff'd*, 39 N.Y.2d 897, 898 (N.Y. 1976); *Montana v. San Jose Mercury News, Inc.*, 34 Cal. App. 4th 790, 796 (Cal. Ct. App. 1995) (newspaper's use of Joe Montana's identity to advertise subscription protected); *see also Groden v. Random House, Inc.*, 61 F.3d 1045, 1050–51 (2d Cir. 1995); *Page v. Something Weird Video*, 960 F. Supp. 1438, 1443 (C.D. Cal. 1996); *Esch v. Universal Pictures Co., Inc.*, No. 6:09-cv-02258-JEO, 2010 WL 5600989, at *6 (N.D. Ala. Nov. 2, 2010).

This test is nowhere near satisfied. First, Plaintiffs do not allege the speech is "misleading [or] related to unlawful activity" so there is no substantial interest in its regulation. *Central Hudson*, 447 U.S. at 564; *see Va. State Bd. of Pharmacy*, 425 U.S. at 773 (holding that State may not "suppress the dissemination of concededly truthful information about entirely lawful activity"). Second, there is no "reasonable fit" between IRPA's aim—preventing unauthorized commercial endorsements—and barring Intelius's publication of search results that identify persons included in its background reports. There is nothing "narrowly drawn" about Plaintiffs' seemingly limitless proposed application of IRPA, which would sweep in any online retailer or publisher that uses search results to identify a person as the subject of a product in response to a user-generated query. So even under the commercial speech standard, the First Amendment bars Plaintiffs' claim.

## B. Applying IRPA To Search Results Violates The Dormant Commerce Clause.

When a state statute directly regulates out-of-state conduct, it is a *per se* violation of the Dormant Commerce Clause. *E.g.*, *Healy v. Beer Inst., Inc.*, 491 U.S. 324, 336–37 (1989) ("[T]he Commerce Clause protects against inconsistent legislation arising from the projection of one state regulatory regime into the jurisdiction of another State."); *Midwest Title Loans, Inc. v. Mills*, 593 F.3d 660, 665 (7th Cir. 2010) ("[A]nother class of nondiscriminatory local regulations is invalidated without a balancing of local benefit against out-of-state burden, and that is where states actually attempt to regulate activities in other states."). Courts can and do resolve this question at a motion to dismiss. *E.g.*, *Est. of Graham v. Sotheby's Inc.*, 860 F. Supp. 2d 1117, 1119 (C.D. Cal. 2012). That is appropriate here, as Plaintiffs' proposed application of IRPA attempts to regulate *conduct*—the publication of Plaintiffs' information to users viewing their electronic devices—that occurred *outside* of Illinois. *See supra* Section III.A.

Further, even if Plaintiffs had alleged a violation of IRPA occurred in Illinois, which they have not, applying IRPA to Intelius's search results burdens Intelius's ability to engage in interstate

commerce in a way that is wholly out of proportion to the *de minimis* state interest in suppressing those results. In cases such as these, the potential disparate effect of the statute must be balanced against the state's interest in the regulation. *Nat'l Paint & Coatings Ass'n v. City of Chicago*, 45 F.3d 1124, 1131 (7th Cir. 1995) ("When the effect is powerful, acting as an embargo on interstate commerce without hindering intrastate sales, the Court treats it as equivalent to a statute discriminating in terms."). There is no reasonable connection between Intelius's display of search results to identify persons included in its background reports in response to user-generated queries and the legislature's intended aims of IRPA—protecting against false endorsements of products. *See Thompson*, 2013 WL 3321612, at *2. So the state interest here is negligible, at best.

This negligible interest is far outweighed by the burden on interstate commerce of applying IRPA as Plaintiffs propose. Because of the "boundary-less" nature of the internet, Intelius's business is nationwide and interstate. *Am. Booksellers Found. v. Dean*, 342 F.3d 96, 103 (2d Cir. 2003) ("Because the internet does not recognize geographic boundaries, it is difficult . . . for a state to regulate internet activities without 'project[ing] its legislation into other States.'") (citation omitted). If IRPA forbids Intelius's search results, then Intelius must continually ascertain the precise physical location of each user who views a search result, whether that person is using a tablet, laptop, or smartphone, and then block any search result from displaying to users while they are located in Illinois. Its only alternative would be to apply the restrictions imposed by IRPA nationwide, notwithstanding that many states do not have right of publicity laws and those that do differ in scope. *See* 1 J. Thomas McCarthy & Roger E. Schechter, *Rights of Publicity and Privacy* § 6:3, Westlaw (2d. ed. updated 2021).[12]

---

[12] Courts have recognized that the Dormant Commerce Clause often is implicated by state regulation of internet-based businesses, like Intelius. *E.g.*, *Am. Booksellers Found.*, 342 F.3d at 103; *see also Am. Libraries Ass'n v. Pataki*, 969 F. Supp. 160, 181 (S.D.N.Y. 1997); *ACLU v.*

Putting Intelius to the choice of either excising Illinois from its nationwide transmission of search results—to the extent it is even technologically feasible—or treating IRPA as a nationwide directive would be an extraordinary interference of one state's law with interstate commerce. It would have the effect of "exalt[ing] the public policy of [Illinois] over that of another" state. *Midwest Title Loans, Inc.*, 593 F.3d at 667–68. That is just what the Commerce Clause forbids.

## V. The Court Lacks Personal Jurisdiction Over Defendants.

Not only have Plaintiffs failed to allege that an IRPA violation occurred in Illinois, *see supra* Section III.A, they fail even to adequately allege that Intelius has sufficient "minimum contacts" with Illinois to support the Court's exercise of personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(2). Specific jurisdiction exists only if: (1) Intelius "purposefully directed its conduct into the forum State"; and (2) Plaintiffs' claim "arise[s] out of or relate[s] to" Intelius's "forum conduct." *See Bristol-Myers Squibb Co. v. Superior Ct. of Cal. San Francisco Cty.*, 137 S. Ct. 1773, 1785– 86 (2017) (citation omitted); *see also N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 492 (7th Cir. 2014). The "core focus [in this inquiry] is always on the defendants' conduct, not the plaintiff's damages." *J.S.T. Corp. v. Foxconn Interconnect Tech.*, 965 F.3d 571, 578 (7th Cir. 2020). Plaintiffs do not offer a theory of Intelius's Illinois conduct that would pass this test.

*First,* Plaintiffs allege that Intelius "transacts significant business in this District." SAC ¶ 10. Operating a website that is accessible in the forum state that does not specifically target that state, however, does not create specific jurisdiction. *See Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801–02 (7th Cir. 2014); *be2 LLC v. Ivanov*, 642 F.3d 555, 559 (7th Cir. 2011); *see Gullen v. Facebook.com, Inc.*, No. 15 C 7681, 2016 WL 245910, at

---

*Johnson*, 194 F.3d 1149, 1161–62 (10th Cir. 1999); *PSINet, Inc. v. Chapman*, 362 F.3d 227, 240 (4th Cir. 2004).

*2 (N.D. Ill. Jan. 21, 2016). Plaintiffs have not alleged that Intelius does anything more than make its website available in Illinois; they have failed to show that this Court has specific jurisdiction.

*Second*, Plaintiffs allege that Intelius misappropriates "the identities of people that they know reside in this District." SAC ¶ 10 This, however, does not suffice to show that there is specific jurisdiction. *Advanced Tactical Ordinance Sys., LLC*, 751 F.3d at 802. Plaintiffs must allege that "defendant's conduct" created "suit-related" contacts to Illinois. *J.S.T. Corp.*, 965 F.3d at 578; *Advanced Tactical Ordinance Sys.*, 751 F.3d at 801. To be sure, the Supreme Court recently held that this does not mean they must allege a "strict causal relationship" between a defendant's forum contacts and her alleged injuries—though in doing so the Court was careful to note its decision did not "consider internet transactions, which may raise doctrinal questions of their own." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.,* 141 S.Ct. 1017, 1026, 1028 n.4 (2021). But even if it is assumed that under *Ford Motor Co.* plaintiffs need not allege a "strict causal relationship"— as Plaintiffs clearly has not done—they still must allege a "link between the defendant's forum contacts and the plaintiff's suit." *Id.* at 1031. Here, Plaintiffs fail to allege any facts that tie Intelius to Illinois for purposes of the specific allegations of this lawsuit—the supposedly unlawful publication of their identifying information in response to a user search on Intelius.com.

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed, and Plaintiffs compelled to adjudicate their claim in arbitration. In the alternative, the Complaint should be dismissed for the lack of personal jurisdiction over Intelius. And if the Court does not dismiss the Complaint on either of these bases, the Court should dismiss the Complaint with prejudice for the reasons set forth above and with prejudice, as this marks Plaintiffs' third attempt to plead actionable claims against Intelius.

Dated: June 23, 2021

Respectfully Submitted,

PEOPLECONNECT, INC., and INTELIUS LLC

By: _/s/ Wade A. Thomson_

Wade A. Thomson, #6282174
Debbie L. Berman, #6205154
Clifford W. Berlow, #6292383
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654-3456
Telephone: 312 222-9350
Facsimile: 312 527-0484
wthomson@jenner.com
dberman@jenner.com
cberlow@jenner.com

Ian Heath Gershengorn (*pro hac vice*)
JENNER & BLOCK LLP
1099 New York Avenue, NW, Suite 900
Washington, DC 20001-4412
Telephone: 202 639-6000
Facsimile: 202 639-6066
igershengorn@jenner.com

*Attorneys for Defendants PeopleConnect, Inc., and Intelius LLC*

26

## CERTIFICATE OF SERVICE

I, Wade A. Thomson, certify that on June 23, 2021, I caused the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will then send a Notice of Electronic Filing to all counsel of record.

/s/ *Wade A. Thomson*
Wade A. Thomson
